UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PRIVATE CAPITAL INVESTMENTS, LLC,

                            Plaintiff,

        -vs-                                                           07-CV-757

JOSEPH V. SCHOLLARD and
JEROME J. SCHENTAG,

                            Defendants.
_____

        By order of Chief United States District Judge William M. Skretny dated        , 2011

(Item    ), this matter has been reassigned to the undersigned for all further proceedings.

        Plaintiff Private Capital Investments, Inc. ("PCI"), an Oregon corporation with its

principal place of business in Grants Pass, Oregon, commenced this action in New York

State Supreme Court, Erie County, on September 27, 2007, seeking damages against

defendants Joseph V. Schollard and Jerome J. Schentag, both citizens of the State of New

York residing within the Western District of New York, for breach of their obligations as

private guarantors of payment on a promissory note.   The case was removed to this court

pursuant to 28 U.S.C. § 1446 on the basis of diversity of the citizenship of the parties, by

notice of removal dated November 6, 2007 (Item 1).

        Defendants have moved pursuant to Rule 56 of the Federal Rules of Civil Procedure

for summary judgment dismissing the complaint (Item 20), and plaintiff has responded by

cross-motion for summary judgment in its favor on the breach of guaranty claim asserted

against each defendant (Item 23).   For the reasons that follow, defendants' motion is

denied, and plaintiff's motion is granted.

# BACKGROUND

The following facts, adapted from the pleadings and submissions on file including the parties' statements submitted pursuant to Rule 56.1 of the Local Rules of Civil Procedure for the Western District of New York,[1] are not in dispute.

In late 2005, at the time of the events and transactions at issue in this action, defendants were associated with an entity known as Emerald Shares, LLC, which sought funding for the development of a marina and resort property in Destin, Florida. On November 29, 2005, Mr. Schollard executed an agreement on behalf of Emerald Shares to retain Trinity Capital Group, LLC, a Florida company that assists in placing lenders with borrowers, "for the limited purpose of procuring funding approval from a bona fide lender or investor or purchaser" to finance the development project. Item 23-7, at 2. Trinity Capital in turn utilized the loan brokering services of Network Funding, L.P., which contacted plaintiff as a potential source of funding. As a result, on December 1, 2005, plaintiff transferred $600,000.00 to a bank account maintained by Trinity Capital as agent for Emerald Shares, in accordance with the following documents executed by Mr. Schollard on November 30, 2005, in his capacity as "Partner/Manager" of Emerald Shares:

1.      A promissory note (the "Note"), by which Emerald Shares promised to pay plaintiff the principal sum of $600,000.00, plus $150,000.00 interest, by January 14, 2006, as provided in the Note (*see* Item 23-12);

---

[1] Local Rule 56.1(a), in effect at the time the motion papers were filed, provided that a party moving for summary judgment must include with its motion a "separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(b) required that the party opposing the motion include in its opposition papers "a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried."

2.     A written "Personal Guaranty," which provides:

Emerald borrowed $600,000.00 from PCI in exchange for its promissory note (the "Note") dated of even date herewith.  Guarantor has agreed, as an inducement to PCI to make the extension of credit to Emerald described in the Note, to guarantee Emerald's payment when due, and timely performance of its obligations under, the Note.

Therefore, in consideration of the premises, as a material inducement to PCI to accept the Note and to extend credit to Emerald, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, Guarantor agrees as follows:

. . . Guarantor absolutely and unconditionally guarantees full and punctual payment when due and the timely performance of Emerald's obligations under the Note, including all renewals, extensions and modifications thereof, and all fees or charges with respect to any renewals and modifications, together with all costs of collection that PCI incurs in collecting Emerald's obligations under the Note or in enforcing any of PCI's rights under this Guaranty . . . . Guarantor will, upon demand, pay to PCI the amount due or, as appropriate, perform the Obligations, when any of the Obligations becomes and remains due and unpaid or unperformed.

Item 23-13; and,

3.     A document entitled "Unanimous Written Consent to Action" by which Mr. Schollard, as a member and manager of Emerald Shares, agreed to grant PCI a mortgage on real property owned by South Elmwood Realty Company and located at 100 S. Elmwood Avenue, Buffalo, New York, to secure the $600,000.00 loan (*see* Item 23-8).

Defendant Schentag executed separate, substantially identical Personal Guaranty and Unanimous Consent documents, signing as a "member" of Emerald Shares (Items 23-14 and 23-9).  The record also contains copies of separate, substantially identical Personal Guaranty and Unanimous Consent documents executed by Michael J. Kujawa, a third member of Emerald Shares, who is not a party to this action (*see* Item 23-10).

-3-

Later on December 1, 2005, Trinity Capital transferred $500,000.00 of the amount received from plaintiff to a trust account held by the Florida law firm of Clark, Partington, Hart, Larry, Bond & Stackhouse, attorneys for the owner of the real property in Destin, to be held in escrow in furtherance of Emerald Shares' efforts to acquire an option to purchase the property.   The remaining $100,000.00 was retained by Trinity Capital as payment of its brokerage fee for procuring the loan from plaintiff.

By letter dated January 26, 2006, PCI's attorney Kimberly A. Wingate advised Emerald Shares that the January 14 due date had passed without payment, and that as a result Emerald Shares was in default under the terms of the Note.   Ms. Wingate further advised that unless she  received a duly executed "allonge"[2] by the close of business that day extending the due date for payment of the amount owed, PCI intended to exercise all available remedies to enforce its rights under the Note, the Personal Guaranty agreements, and the mortgage on the 100 S. Elmwood Ave. property (*see* Item 23-18).   The record contains two such allonges, one executed on January 26, 2006 by David R. Knoll as Manager of Emerald Shares (Item 23-29), and one executed on February 4, 2006, by defendant Schollard (Item 23-20), but no payment was forthcoming.

By letters dated February 16, April 5, May 5, and May 9 2006, plaintiff notified Emerald Shares and Mr. Schollard that all amounts then due under the Note and personal guarantees had become immediately due and payable, subject to appropriate adjustment of interest rates and waiver of accumulated late fees (*see* Items 23-21; 24; 24-2; and 24-3).

---

[2]"Allonge" is defined in Black's Law Dictionary as "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements."   BLACK'S LAW DICTIONARY 88 (9th ed. 2009).

Despite these repeated demands and adjustments, Emerald Shares did not make any payment of amounts due under the Note.

Consequently, plaintiff filed a lawsuit against Emerald Shares in the Circuit Court for the First Judicial Circuit in and for Oskaloosa County, Florida, seeking to collect all amounts due under the Note, including interest, along with costs, expenses, and attorneys' fees (*see* Item 24-4).  On April 19, 2007, following entry of default against Emerald Shares for failing to answer the complaint or otherwise defend the lawsuit, the Circuit Court found the Note to be valid and enforceable upon good and valuable consideration, and entered final judgment in favor of plaintiff for the principal, interest, costs, and attorneys' fees in the total amount of $774,314.82, plus post-judgment interest at the annual rate of 11 percent (*see* Item 24-5).  A deposition of Emerald Shares in aid of execution on the Florida judgment was scheduled for June 27, 2007, but no representative of Emerald Shares appeared (*see* (Item 24-7).

PCI then commenced this action in September 2007 alleging that defendants breached the guaranty agreements by failing to honor PCI's demands for payment of the sums due from Emerald Shares under the terms of the Note, as reduced to judgment in Florida (*see* Item 1, Complaint, Index No. 2007/9535).  After removal, and some limited document discovery, defendants moved for summary judgment seeking dismissal of the complaint on the ground that the personal guarantees are void and unenforceable under the Statute of Frauds because they fail to state in writing the substantial and material terms of the entire underlying agreement.  Alternatively, defendants contend that even if the court should find the guaranty agreements to be valid, there can be no recovery against

defendants because of the failure of consideration, *i.e.*, the "direct" extension of credit to Emerald Shares contemplated in the guaranty agreements never occurred.  *See* Item 20.

In response, plaintiff filed a cross-motion for summary judgment in its favor on the breach of guaranty claims, based on the documentary evidence in the record establishing that the written agreements executed by defendants Schollard and Schentag are valid, entered upon good and valuable consideration, and enforceable as personal guarantees of Emerald Shares' performance of its obligations under the Note.  *See* Item 23-2.

For the reasons that follow, defendants' motion for summary judgment is denied, and plaintiff's motion for summary judgment is granted.

## DISCUSSION

### I.    Summary Judgment

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is material if it "might affect the outcome of the suit under the governing law . . . ."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; *see also Hamilton Bank, N.A. v. Kookmin Bank*, 245 F.3d 82, 89 (2d Cir. 2001).

In reaching a summary judgment determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 574 (2d Cir. 2005).  The moving party bears the initial burden of establishing that there are no genuine issues of material

fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). That burden may be satisfied by pointing out the absence of evidence to support the non-movant's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once this initial showing is made, the non-moving party may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *Anderson*, 477 U.S. at 256; *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996). Mere conclusory allegations are insufficient, and "[t]here must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts'" to defeat a motion for summary judgment. *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), *cert. denied*, 500 U.S. 928 (1991).

The trial court's function at the summary judgment stage "is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Svc., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *see also Keystone Mfg Co. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 549 (W.D.N.Y. 2005). "In examining the record it must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute." *Gallo*, 22 F.2d at 1224 (citing *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).

## II.   Governing Substantive Law

As an initial matter, the parties are in disagreement as to which state's substantive law should be applied to resolve the underlying dispute about the enforceability of the personal guarantees executed by defendants.  Plaintiff contends that Oregon law governs, based upon the specific choice of law provision in each Personal Guaranty document which states that "[t]he internal laws of the State of Oregon will govern this Guaranty." Items 23-13 and 23-14, at 3.  Defendants argue that Florida law governs, since plaintiff is seeking damages in accordance with a final judgment entered by a Florida court, against a Florida corporation, for failure to pay amounts due under a personal guaranty of a loan made to purchase an option for land located in Florida.

A federal court sitting in diversity must apply the choice-of-law rules of the forum state.  *See Tri-State Empl. Servs., Inc. v. Mountbatten Sur. Co.*, 295 F.3d 256, 260 (2d Cir. 2002) (citing  *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496-97 (1941)).  Under New York's choice of law rules, "in cases involving a contract with an express choice-of-law provision:  Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Hartford Fire, Inc. Co., v. Orient Overseas  Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000) (citing *International Minerals and Resources, S.A. v. Pappas*, 96 F.3d 586, 592 (2d Cir. 1996)).

In this case, there are no allegations that anyone from PCI fraudulently induced defendants to execute the personal guarantees,[3] nor is there any indication that application

---

[3] In their response to plaintiff's cross-motion for summary judgment, defendants argue that they were defrauded into providing their guarantees by David Knoll and Steve Blumhagen, two other partners of Emerald Shares who are not parties to this action.  However, there is nothing in the pleadings or submissions on file to show or suggest that Mr. Knoll or Mr. Blumhagen was acting on behalf of PCI in such a manner as to render PCI responsible for any fraudulent conduct on their part.

of Oregon law to the underlying dispute would violate public policy.   In addition, the

circumstances of the transaction at issue suggest that sufficient contacts with the State of

Oregon exist to honor the parties' contractual choice of law.   Specifically, Oregon is the

state in which PCI is registered as a corporation, the state where PCI's principal place of

business is located, and the state where payment was to be made by Emerald Shares

under the provisions of the Note.   The Note itself also expressly provides that it "is made

and executed under and will be governed by the internal laws of Oregon."   Item 23-12, at

2-3.  Under these circumstances, the court must give effect to the parties' choice of Oregon

law as the substantive law to govern resolution of the underlying dispute regarding the

enforceability of the defendants' personal guarantees of payment on the Note.

III.    **Defendants' Motion**

    A.    **Statute of Frauds**

    The Oregon Statute of Frauds provides, in pertinent part:

    (1) In the following cases the agreement is void unless it, or some note or
    memorandum thereof, expressing the consideration, is in writing and
    subscribed by the party to be charged, or by the lawfully authorized agent of
    the party; evidence, therefore, of the agreement shall not be received other
    than the writing, or secondary evidence of its contents in the cases
    prescribed by law:

    . . . .

    (b) An agreement to answer for the debt, default or miscarriage of another.

Or. Rev. Stat. § 41.580(1).   As a general matter, the Statute of Frauds renders an

agreement unenforceable "unless the party seeking enforcement can produce a writing or

series of writings identifying the contracting parties, subject matter, consideration, and

essential terms of the agreement, signed by the party to be charged." *Barman v. Union Oil Co. of California*, 50 Fed. Appx. 824, 828 (9th Cir. 2002) (citing *Coast Bus. Brokers, Inc. v. Hickman*, 396 P.2d 756, 758 (Or. 1964)).

Citing New York and Florida law, defendants contend that the guarantees do not satisfy the Statute of Frauds because the essential terms of the transaction described in the written documents involved an "extension of credit" to Emerald Shares, but no direct extension of credit ever took place.   Instead, the loan amount was transferred to an account maintained by the loan broker, followed by transfer of the principal amount (minus the broker's fee) to an escrow account maintained by a law firm representing the owner of the Destin property, and there is no written agreement indicating that this was what defendants intended to occur.

However, the court's review of the undisputed documentary evidence in the record reveals that the written Personal Guaranty agreements signed by defendants in this case clearly identified the principal parties (defendants Schollard and Schentag, as "Guarantors," and PCI as the beneficiary of the guarantees); the subject matter (each defendant's individual personal guarantee of Emerald Shares' payment and performance under the Note); the mutual promises (defendants' "absolute[ ] and unconditional[ ]" promise to pay the amount due on the Note upon demand, and PCI's promise to make the loan, or "extension of credit," to Emerald Shares as described in the Note); and the consideration (the inducement to PCI to accept the Note and to extend credit to Emerald Shares, as well as "other good and valuable consideration"). *See Automotive Equipment Co. v. 3 Bees Logging Co.*, 444 P.2d 1019, 1022 (Or. 1968) ("[T]he words 'for other good and valuable consideration' are a sufficient expression of consideration to satisfy the

statute."); *Emmert v. No Problem Harry, Inc.*, 192 P.3d 844, 848 (Or.App. 2008) (expression of consideration sufficient to comply with § 41.580(1) need not be specific but must appear with reasonable clearness from entire contract). Defendants have not cited, nor has the court found, any case law or other authority to support the proposition that a personal guaranty of payment on a loan is unenforceable because it did not explicitly describe the details as to how the loan funds would be transferred between bank accounts–here, the accounts of the lender (PCI), the loan broker (Trinity Capital), and the law firm representing the ultimate beneficiary (the seller of the Florida property).

In addition, under Oregon law, the requirement in the Statute of Frauds that a promise to answer for the debt of another must be in writing is excused "when the consideration for the promise is in fact or apparently desired by the promisor mainly for his own or her own advantage, rather than to benefit the third person." *White Stag Manufacturing, Co. v. Gross*, 679 P.2d 312, 316 (Or. Ct. App. 1984) (citing RESTATEMENT (SECOND) CONTRACTS, § 116 (1979); *Meader v. Orbit Inn Corp.*, 556 P.2d 1365, 1366 (Or. 1976)). This long-recognized exception, variably known as the "main purpose," "original promise," or "leading object" doctrine, is often traced to the U. S. Supreme Court's opinion in *Davis v. Patrick*, 141 U.S. 479 (1891), in which the Court offered the following explanation of the statute's requirement that a promise to answer for another's debt be in writing:

> The purpose of this provision was not to effectuate, but to prevent, wrong. It does not apply to promises in respect to debts created at the instance and for the benefit of the promisor, but only to those by which the debt of one party is sought to be charged upon and collected from another. The reason of the statute is obvious, for in the one case, if there be any conflict between the parties as to the exact terms of the promise, the courts can see that justice is done by charging against the promisor the reasonable value of that

-11-

> in respect to which the promise was made; while in the other case, and when a third party is the real debtor, and the party alone receiving benefit, it is impossible to solve the conflict of memory or testimony in any manner certain to accomplish justice.

*Davis*, 141 U.S. at 487.   Thus, when "the promisor has a personal, immediate, and pecuniary interest in the transaction, and is therefore himself a party to be benefited by the performance of the promisee[,] . . . the reason which underlies and which prompted this statutory provision fails, and the courts will give effect to the promise." *Id*. at 488.

In this case, it is undisputed that defendants Schollard and Schentag were members and/or managers of Emerald Shares at the time they executed the guarantees for the purpose of obtaining a substantial loan from PCI to enable their proposed marina/resort development.  Under these circumstances, it is clear that each defendant had a personal and immediate pecuniary interest in the underlying transaction, and were themselves parties to be benefited by plaintiff's performance, rendering the Statute of Frauds inapplicable to the guarantees.

Accordingly, the court finds that defendants' Statute of Frauds defense to plaintiff's breach of guaranty claims fails as a matter of law.

## B.    Failure of Consideration

Defendants argue in the alternative that, even if the court should reject the Statute of Frauds defense, there can be no recovery under the personal guarantees because of the failure of consideration, *i.e.*, the "direct" extension of credit to Emerald Shares contemplated in the guaranty agreements never occurred.  Based on the court's review of the evidence in the record, this argument must also fail.

-12-

As discussed above, the primary consideration recited in the personal guarantees was the "material inducement to PCI to accept the Note and to extend credit to Emerald . . . ." Item 23-13, at 2. Contrary to defendants' argument, this recitation does not specify that the extension of credit could only be accomplished by a direct transfer of the funds to Emerald Shares. Indeed, the documentary evidence in the record demonstrates that the method of transferring the borrowed funds to the broker, and ultimately to the escrow account maintained by the Florida law firm representing the seller of the Destin property, was contemplated and expressly endorsed by defendant Schollard on behalf of Emerald Shares. Specifically, on December 8, 2005, Mr. Schollard signed a document entitled "Emerald Shares, LLC, LLC Resolution" which purported to grant David Knoll full authority to take all actions on behalf of Emerald Shares necessary to obtain an "Option Contract" for purchasing the Destin property–including authorizing the use of the escrow account to transfer the funds to the seller. *See* Item 23-17. In other words, the evidence shows that the entire transaction occurred just as the parties intended.

For these reasons, the court finds that defendants are not entitled to summary judgment dismissing plaintiff's breach of guaranty claims.

## IV.    Plaintiff's Cross-Motion

Plaintiff relies on the same documentary evidence in the record to establish the enforceability of defendants' guarantees of Emerald Shares' performance of its obligations under the Note. As discussed above, the written guarantees contain all of the essential terms for enforcement under Oregon law, and are supported by adequate consideration in the form of an inducement to plaintiff to accept the Note and extend a $600,000.00 loan

-13-

to Emerald Shares.  There is no language in the guarantees, or in the Note, that could be reasonably interpreted to require plaintiff to transfer the loaned funds to a particular bank account, or to prohibit defendants' broker from transferring the funds obtained from plaintiff to a designated escrow account for the benefit of the intended recipient of the loan proceeds.

In addition, the record presented on summary judgment clearly reveals that Emerald Shares provided express written authority in the brokerage agreement for Trinity Capital to act as its agent "for the limited purpose of procuring funding approval from a bona fide lender or investor or purchaser" to finance the development project.  Item 23-7, at 2.  The term "funding" is defined in the agreement as:

> any transaction or series or combination of transactions whereby (a) a loan is made to [Emerald Shares]; or (b) directly or indirectly, control of a material interest in the [Destin] property . . . is transferred for consideration, including without limitation, a cash purchase, lease with or without a purchase option, merger or consolidation of entities, a tender or exchange offer, the formation of a joint venture, minority investment or partnership, or any similar transaction.

*Id.*  There is nothing in this language, or indeed elsewhere, in the record, to support defendants' argument that the parties intended to limit Trinity Capital's authority in such a way that the only acceptable arrangement would be one where the borrowed funds were to be transferred directly to Emerald Shares, thereby rendering the guarantees of payment on the Note void and unenforceable when the funds were transferred from PCI's account to Trinity's account.

In any event, even if the court could find support for this argument, the evidence establishes that Emerald Shares ratified the transaction when it authorized the release of the funds in escrow to the seller of the Destin property as deposit and/or payment under

the Option Contract.  Under Oregon law, ratification occurs "[w]henever a principal accepts the benefits of his agent's unauthorized acts with knowledge of all the material facts . . . ." *Cranston v. West Coast Life Ins. Co.*, 142 P. 762, 766 (Or.  1914), *quoted in Alldrin v. Lucas*, 490 P.2d 141, 145 (Or. 1971).  Ratification requires (1) the existence of a principal; (2) an act done as agent; (3) the principal's knowledge of the material facts; and (4) intent by the principal to ratify the agent's acts. *See Alldrin*, 490 P.2d at144.

    In this case, as described above, there is no question that defendants had full knowledge of the material facts regarding Trinity Capital's authority under the brokerage agreement to act as Emerald Shares' agent in procuring the loan from PCI.  In addition, the evidence in the record clearly establishes that, by executing the "Emerald Shares Resolution" on December 8, 2005, defendant Schollard manifested an intent on behalf of the principal to authorize the agent's use of the escrow account as a conduit for transferring the borrowed funds from PCI to the seller as an "earnest money deposit" and/or "Option Payment due under the Option Contract."  Item 23-17, at 4.

    Based on this record, the court finds no genuine issues of material fact for trial regarding the enforceability of each defendant's personal guaranty of Emerald Shares' payment on the Note.  Accordingly, plaintiff is entitled to summary judgment in its favor on its claims for breach of the guaranty agreements, as a matter of law.

## CONCLUSION

    For the foregoing reasons, defendants' motion for summary judgment (Item 20) is denied.  Plaintiff's cross-motion for summary judgment (Item 23) is granted.  The Clerk of the Court is directed to enter judgment in this case in favor of plaintiff in the amount of

$774,314.82, plus post-judgment interest at the annual rate of 11 percent measured from April 19, 2007, the date of final judgment in the Florida action described in the text above.

So ordered.

         \s\ John T. Curtin

           JOHN T. CURTIN
       United States District Judge

Dated:   July    27    , 2011
p:\opinions\08-757.jul192011