UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PRIVATE CAPITAL INVESTMENTS, LLC

                **Plaintiff,**

        **-v-**                                       07-CV-0757C(Sr)

**JOSEPH V. SCHOLLARD and**

**JEROME J. SCHENTAG,**

                **Defendants.**

---

## DECISION AND ORDER

By Decision and Order entered July 21, 2011, the Hon. John T. Curtin granted plaintiff's motion for summary judgment on it's breach of guaranty claim against defendants and directed entry of judgment in favor of plaintiff in the amount of $774,314.82, plus post-judgment interest at the annual rate of 11 percent measured from April 19, 2007. Dkt. #39. Judgment was entered on July 28, 2011. Dkt. #40. As of February 1, 2014, the judgment totals approximately $1,335,000.00. Dkt. #49-1, ¶ 3.

On March 14, 2013, after discovering that defendant Jerome Schentag maintains financial accounts and retirement plans with Charles Schwab & Co., Inc. ("Charles Schwab"), plaintiff served Charles Schwab with a restraining notice and information subpoena, as well as exemption notices, exemption claim forms and a prepaid return envelope as required by section 5222 and 5222-a of the New York Civil

Practice Law and Rules ("CPLR").  Dkt. #49-1, ¶ 5.  In response, Charles Schwab identified an account described as the Schentag Corporation Defined Benefit Pension Plan ("Schentag Plan").  Dkt. #49-1, ¶ 6.

Currently before the Court is plaintiff's motion for an Order declaring that the Schentag Plan is not exempt under section 5205(c) of the CPLR and is eligible for levy by service of execution on the custodian, Charles Schwab.  Dkt. #49.

In accordance with 28 U.S.C. § 636(c), the parties have consented to the determination of this motion by the undersigned.  Dkt. #58.

For the reasons set forth below, the motion is denied.

## FACTS

Schentag Corp is an active domestic New York business corporation formed on January 3, 1992 by Mr. Schentag for his consulting and speaking business. Dkt. #49-1, ¶¶ 11-12.  Mr. Schentag is the Chief Executive Officer and sole employee of Schentag Corp.  Dkt. #48, ¶¶ 11 & 13.  Schentag Corp operates exclusively out of Mr. Schentag's personal residence, which is also the principal executive office and location for service of process.  Dkt. #49-1, ¶ 11.  Mr. Schentag owns 99% of the shares of stock of Schentag Corp; his adult daughter, Annie Schentag, owns 1% of the shares of stock of Schentag Corp.  Dkt. #60, ¶ 5.

The Schentag Plan was established as a single-employer defined benefit pension plan in 2000.  Dkt. #49-1, ¶ 14.  Schentag Corp has at all times served as employer, plan sponsor and plan administrator of the Schentag Plan, which is funded through a trust fund for which Mr. Schentag has served as the sole trustee.  Dkt. #49-1, ¶ 14 & Dkt. #60, ¶ 6.  Mr. Schentag is the sole participant of the Schentag Plan.  Dkt. #49-1, ¶ 20 & Dkt. #60, ¶ 6.  Section 15.03 of the Schentag Plan contains a prohibition on the alienation or assignment of a participant's plan benefit as required by the Employee Retirement Income Security Act of 1974 *et seq*. ("ERISA").  Dkt. #60, ¶ 8.  The estimated value of the Schentag Plan is $1,008,131.  Dkt. #60-5, p.8.

Between April 4, 2011 and June 14, 2012, Mr. Schentag withdrew funds totaling $361,000.00 from the Schentag Plan on at least seven occasions, including at least three transfers totaling $186,000.00 to his personal bank account and $125,000.00 to Therasyn Sensors Inc., a business entity controlled by plaintiff.  Dkt. #49-1, ¶¶ 32 & 34 & Dkt. #60, ¶ 12.  At his deposition, Mr. Schentag testified that he often withdrew money from the Schentag Plan to pay expenses and avoid defaulting on personal and business debts. Dkt. #49-1, ¶ ¶ 28-29.  Mr. Schentag affirms that the September 9, 2011 withdrawal was returned on October 25, 2011 and that he believed that the other withdrawals were proper under the terms of the Schentag Plan.  Dkt. #60, ¶ ¶ 13-14.  Specifically, Mr. Schentag avers that he erroneously assumed that the distribution and tax rules applicable to Individual Retirement Accounts ("IRAs"), which generally permit an IRA owner to elect a distribution from the IRA without tax penalty at the age of 59½, applied to the Schentag Plan.  Dkt. #60, ¶ 14.

Mr. Schentag affirms that, in order to preserve the qualified status of the Schentag Plan, Schentag Corp will submit to the IRS an application for a Voluntary Correction Plan ("VCP"), pursuant to Revenue Procedure 2013-12.  Dkt. #60, ¶ 16.  The application concedes that although the Schentag Plan does not provide for in-service or lump sum distributions of a portion of a participant's accrued benefit, seven partial lump sum distributions were made from the Schentag Plan to Mr. Schentag between April of 2011 and June of 2012.  Dkt. #60-5, p.16.  Specifically, the application states that

> Because (a) Mr. Schentag was (and remains) an active employee of the Company, (b) the Plan does not provide for in-service distributions at age 62, and (c) the Plan does not provide for partial lump sum distributions, the distributions were not permitted under the terms of the Plan.

Dkt. #60-5, p.17.  The application proposes to repay the 2011 distributions with interest and to amend the Schentag Plan retroactive to January 1, 2012 to provide for lump sum distributions of a portion of the participant's accrued benefit and to provide for in-service distributions upon attainment of age 62.  Dkt. #60-5, p.18.

By Order entered February 13, 2014, the Hon. John T. Curtin extended the duration of the restraint of the funds in the Schentag Plan until this motion has been resolved.  Dkt. #52.

## DISCUSSION AND ANALYSIS

Plaintiff claims that the Schentag Plan is not qualified under section 401 of the Internal Revenue Code ("IRC"), rendering it non-exempt for purposes of CPLR § 5205(c).  Dkt. #50.  Specifically, plaintiff argues that by distributing benefits to Mr.

Schentag while he remained in service to Schentag Corp, the Schentag Plan violates the qualification requirements set forth at 26 C.F.R. 1.401-1(b)(1)(I), and cannot, therefore, be considered exempt from execution of judgment.  Dkt. #50, pp.8-9.

Mr. Schentag argues that the assets in the Schentag Plan are exempt from creditor execution pursuant to CPLR § 5222-a because the Schentag Plan is an ERISA-covered plan whose assets are protected by the anti-alienation provisions of ERISA.  Dkt. #61.  To the extent that the Schentag Plan does not currently meet the requirements to be a "qualified" plan pursuant to IRC § 401, Mr. Schentag argues that he has taken steps to correct the deficiencies.  Dkt. #61.

Plaintiff replies that ERISA's anti-alienation provisions are irrelevant under CPLR § 5205(c), and notes that Mr. Schentag admits that the Schentag Plan is not currently a qualified plan pursuant to IRC § 401(a).  Dkt. #63, p.1.  Even if ERISA was relevant, plaintiff argues that the Schentag Plan does not qualify for the protections of ERISA because it has no employee participants.  Dkt. #63., pp.2-3.

Exemption of IRC § 401 qualified pension plans from execution of judgment

Rule 69(a)(1) of the Federal Rules of Civil Procedure provides for execution of judgments in accordance with the procedure of the state where the district court is located.  CPLR § 5205(c)(2) exempts, *inter alia*, any plan established by a corporation which is qualified under IRC § 401 from satisfaction of a money judgment.  As set forth in the Treasury Regulations,

> A pension plan within the meaning of section 401(a) is a plan established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits to his employees over a period of years, usually for life, after retirement.

26 C.F.R. § 1.401-1(b)(1)(I). "Internal Revenue Service Revenue ["IRS"] Rulings make it clear that a pension plan does not qualify for tax-exempt status pursuant to [IRC § 401(a)] if it permits distributions of the employers' contributions . . . prior to severance of employment or termination of the plan." *Meckes v. Cina*, 75 A.D. 470, 474 (4th Dep't 1980). Thus, a plan which "permits distributions prior to normal retirement and prior to termination of employment or termination of the plan," does not qualify under IRC § 401. *Id.* at 475; *See* Rev. Rul. 2004-12 (The IRS "has interpreted [26 C.F.R. § 1.401-1(b)(1)(I)] to mean that employer contributions to a pension plan may not be distributed prior to retirement, death, disability or other severance from employment, or termination of the plan."); Rev. Rul. 74-254 (same).

As plaintiff concedes, the Schentag Plan does not provide for distributions prior to retirement. Dkt. #60-5, pp.16-17. That the Schentag Plan comports with the statute is not sufficient, however; the Schentag Plan must satisfy the requirements of the statute

> in both form and operation. That means that the provisions in the plan document must satisfy the requirements of the Code and that those plan provisions must be followed.

http://www.irs.gov/Retirement-Plans/A-Guide-to-Common-Qualified-Plan-Requirements; See 26 C.F.R. § 1.401-1(b)(3) ("The law is concerned not only with the form of a plan but also with its effects in operation.").

As it is uncontroverted that Mr. Schentag received distributions from the Schentag Plan prior to normal retirement and prior to termination of employment or termination of the plan, the Schentag Plan is not qualified under IRC § 401 and cannot, therefore, receive the protection afforded by New York's CPLR § 5205(c)(2).  *See Daniels v. Agin,* 736 F.3d 70, 79 (1st Cir. 2013) (plan assets not exempt from bankruptcy estate where operation of plan repeatedly violated IRC § 401); *In re Plunk*, 481 F.3d 302 (5th Cir. 2007) (pension plan no longer qualified operationally, and therefore not exempt from bankruptcy estate, where debtor misused plan assets); *In re Blais*, No. 93-3219, 2004 WL 1067577, at *4-5 (Bkrtcy. S.D. Fla March 16, 2004) (debtor's practice of borrowing pension plan funds violated IRC and provisions of pension plan and constitute operational violations giving rise to plan disqualification); *In re Goldschein*, 244 B.R. 595, 601-02 (Bkrtcy. D. Md. 2000) (pension plan not qualified pursuant to the IRC, and assets accordingly not exempt from bankruptcy estate, where debtor used pension plan as his "personal piggy bank," obtaining funds in violation of pension plan provisions and applicable statutes);  *In re Lane,* 149 B.R. 760, 765 (Bkrtcy. E.D.N.Y. 1993) (Since the pension plan failed to meet minimum contribution requirements, they were not qualified pursuant to the IRC and could not claim exemption from the bankruptcy estate).  The Court notes that because the VCP is "not available to correct failures relating to the diversion or misuse of plan assets," it cannot retroactively qualify the Schentag Plan so as to protect it from satisfaction of plaintiff's judgment in accordance with CPLR § 5205(c)(2). Internal Revenue Bulletin: 2013-4 § 4.12.

ERISA's anti-alienation provision

29 U.S.C. § 1056(d) requires that each pension plan governed by ERISA "provide that benefits provided under the plan may not be assigned or alienated." The Supreme Court of the United States has interpreted this provision as erecting a general bar to the garnishment of pension benefits from plans covered by ERISA. *Guidry v. Sheet Metal Pension Fund*, 493 U.S. 365, 371 (1990); *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 829 (1988) (recognizing that state collection laws affecting ERISA plans are pre-empted). "Such a provision acts, by definition, to hinder the collection of a lawful debt." *Guidry,* 493 U.S. at 376. Unlike IRC qualification, violations in the operation of a plan do not vitiate enforcement of ERISA's anti-alienation prohibition and there are no equitable exceptions to enforcement of ERISA's anti-alienation prohibition. *In re Handel,* 301 B.R. 421, 434 (Bkrtcy. S.D.N.Y. 2003) ("ERISA's prohibition of alienation is enforceable as long as the plan *on its face* complies with ERISA."). "Inequitable or not . . . the anti-alienation clause governs;" there "is no 'equity' exception to § 1056(d)(1) of ERISA." *In re Baker*, 114 F.3d 636, 640 (7th Cir. 1997).

To qualify as an employee benefit plan pursuant to ERISA, the pension plan "must provide benefits to at least one employee." *Sipma v. Massachusetts Cas. Ins. Co.*, 256 F.3d 1006, 1009 (10th Cir. 2001); *See* 29 U.S.C. § 1002(2)(A). ERISA defines "employee" circularly as "any individual employed by an employer." 29 U.S.C. § 1002(6). More specifically, Department of Labor regulations define "employee benefit

plan" to exclude "any plan . . . under which no employees are participants covered under the plan." 29 C.F.R. § 2510.3-3(b). The regulations further specify that "[a]n individual and his or her spouse shall not be deemed to be employees with respect to a trade or business . . . which is wholly owned by the individual or by the individual and by his or her spouse." 29 C.F.R. § 2510.3-3(c)(1). Thus, "[a] sole business owner would not be counted as an employee under 29 C.F.R. § 2510.3-3(c)(1)." *Leckey v. Stefano*, 263 F.3d 267, 271 (3rd Cir. 2001). In the instant case, however, plaintiff is not a sole business owner nor does he share ownership with a spouse; his daughter owns 1% of the corporation. As Mr. Schentag is not the sole owner of Schentag Corp, he is not excluded from the definition of employee for purposes of determining whether the Pension Plan is an employee benefit plan subject to ERISA's anti-alienation provision. *See Spima,* 256 F.3d at 1012 ("Since Mr. Spima was not the sole shareholder of the corporation, he is not excluded from the definition of 'employee' for purposes of determining whether an 'employee benefit plan' exists."); *Leckey,* 263 F.3d 267 (step-daughter's ownership interest in corporation permitted co-owner to be counted as employee for purposes of ERISA); *In re Metz*, 225 B.R. 173, 177 (9th Cir. 1998) (Since Robert S. Metz was not the sole owner of Metz Construction, he is an employee within the Department of Labor's definition and the pension plan is subject to ERISA even though Mr. Metz is the sole participant). As a result, ERISA's anti-alienation provision prevents use of the pension plan assets to satisfy the judgment.

## CONCLUSION

For the reasons set forth above, plaintiff's motion (Dkt. #49), for an Order declaring that the Schentag Plan is eligible for levy by service of execution upon the custodian, Charles Schwab, is denied.

**SO ORDERED.**

**DATED:** Buffalo, New York
June 10, 2014

 *s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**